IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

TRACY LEE KNUTSON,

         Plaintiff,

v.

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

         Defendant.

OPINION AND ORDER

21-cv-458-slc

_____

  Plaintiff Tracy Lee Knutson brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of an adverse decision of the acting commissioner of Social Security.  Knutson, who suffers from a number of physical and mental impairments, challenges the acting commissioner's determination that she is not eligible for either disability insurance benefits or supplemental security income under the Social Security Act because she remains capable of  performing a substantial number of jobs in the national economy in spite of her impairments.  Knutson contends that the administrative law judge (ALJ) who reviewed her claim at the administrative level committed these errors:  (1) she failed to cite logical reasons, supported by evidence in the record, for her decision to discount medical opinions favorable to Knutson's claim; (2) she failed to consider the combined impact of all of Knutson's impairments, including her obesity; and (3) she mischaracterized the record when finding that Knutson's subjective complaints were not entirely consistent with the evidence.[2]

---

 [1] The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting commissioner.

 [2] In addition to these substantive attacks on the ALJ's decision, Knutson raises a constitutional challenge, arguing that the ALJ lacked authority to act on her claim because 42 U.S.C. § 902(a)(3), which limits the President's authority to remove the commissioner of social security without cause, is unconstitutional.  I considered and rejected this same constitutional challenge in *Klawitter v. Kijakazi*, 21-cv-216-slc, and I reject it here for the same reasons, without further discussion.  *See id.*, 3/22/22 Op. and Ord., dkt. 21, at 12-13.

I agree with Knutson that the ALJ erred in relying on outdated state agency opinions and did not otherwise build an adequate and logical bridge between the evidence and her conclusions regarding Knutson's reaching and handling limitations. Therefore, I am reversing the commissioner's decision and remanding this case for further proceedings.

The following facts are drawn from the administrative record ("AR"):

## FACTS

Knutson, now 51, applied for Disability Insurance Benefits and Supplemental Security Income on September 15, 2015, alleging disability beginning May 7, 2015. Knutson formerly worked part-time as a certified nursing assistant. She alleged that she was unable to work because of limitations posed by the following impairments: fibromyalgia; left hand issues (arthritis, tendinitis, and carpal tunnel); bursitis in both hips; right-sided sciatica; right-sided neuropathy; asthma; bladder leakage; acid reflux; anxiety; and depression. AR 262. In addition to these impairments, Knutson is obese, with a BMI ranging from 29 to 34.

On forms submitted with her application, Knutson asserted that she no longer could work because everything in her body hurt. AR 270. She said she spent most of the day lying in bed on a heating pad, except for driving to pick her kids up from school. Knutson needed no help with personal care, and she remained able to do some laundry, meal preparation, and grocery shopping, although she reported that she needed help from her children with these tasks. AR 274-75. In addition, Knutson was able to go out alone, manage her finances, get along with others, pay attention, follow instructions, and fish, camp, and play cards "as tolerated." AR 275-77. Knutson estimated she could sit for 15 minutes, stand 10-15 minutes, and walk 15-30 minutes before needing a break, and reported that the total amount of time she could do each varied depending on the day and her pain level. AR 280.

After the local disability agency denied her claim initially and on reconsideration, Knutson requested an administrative hearing, which was held on October 11, 2018 before Administrative Law Judge ("ALJ") Deborah Giesen. Knutson appeared by video with counsel and testified about her impairments and limitations. Most of her testimony focused on her left thumb. Plaintiff testified that she had arthritis in her left thumb that was painful all the time and that prevented her from grasping or holding items. She said she could use her fingers to grasp a handle but she could not use her hand to grab items such as a glass. AR 58. She was able to drive, using mainly her right hand. AR 53. Plaintiff said she had received about 12 steroid injections in the thumb but they had stopped working; her doctors told her that her only remaining treatment options were to get the joint fused or a tendon graft. AR 58. She said she was waiting to undergo surgery until she couldn't handle the pain anymore because she would have no mobility if the joint was fused. AR 61. Plaintiff reported that her thumb was much worse at the time of the hearing than it was when she first applied for benefits in 2015. AR 61.

After plaintiff testified, the ALJ called a vocational expert, Kristin Panella. The ALJ asked Panella to assume a hypothetical individual of plaintiff's age, education, and work experience, who was capable of performing light work (six hours sitting, standing or walking and lifting up to 20 pounds), with frequent[3] handling and fingering with the left hand, and no concentrated exposure to dust, fumes, gases, poor ventilation, or temperature extremes. AR 64. Panella testified that such an individual would be unable to perform plaintiff's past work as a nurse's assistant but could perform other jobs at a light level, namely, cashier, inspector and hand packager, and ticket marker, and that such jobs existed in significant numbers in the national economy. However, Panella testified, plaintiff would not be able to perform any of those jobs if she was limited to only occasional[4] handling and fingering with her left hand. AR 65.

---

[3] Up to 2/3 of the work day or a total of 6 hours in an eight-hour day, SSR 83-10.

[4] Up to 1/3 of an eight-hour work-day or just over 2 hours in an eight-hour day, SSR 83-10.

3

On March 4, 2019, the ALJ issued a decision, applying the commissioner's five-step evaluation process for disability claims. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Knutson had not engaged in substantial gainful activity since her alleged onset date of May 7, 2015. At step two, she found that Knutson had the following impairments that were severe: De Quervain's tenosynovitis in the left wrist; carpometacarpal arthritis in the left thumb; obesity; fibromyalgia; degenerative disk disease of the lumbar spine; and bilateral trochanteric bursitis. The ALJ acknowledged that Knutson had a number of other impairments, but she found that these imposed no more than minimal work-related limitations and therefore were not severe as that term is defined in the SSI regulations. At step three, the ALJ found that none of Knutson's severe impairments, whether considered singly or in combination, were severe enough to meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*a.k.a.* "the Listings").

Next, as a predicate to her finding at step four, the ALJ assessed Knutson's residual functional capacity ("RFC"). She determined that Knutson had the RFC to perform work at the light exertional level, except that she could perform handling/fingering with her left upper extremity only on a frequent basis and she could have no concentrated exposure to dusts, fumes, gases, poor ventilation or temperature extremes. AR 26. In reaching this conclusion, the ALJ found that Knutson's own statements about the limiting effects of her symptoms were not entitled to much weight because they were inconsistent with her medical records, which showed a "fairly routine and conservative set of office visits" with many largely normal physical examinations, and with her "many activities of daily living," including shopping for groceries and clothing, fishing, camping, and playing cards. AR 27. Accordingly, the ALJ explained, her RFC was drawn largely from the objective medical evidence and the persuasive medical opinion statements. AR 28.

At step four, the ALJ found that Knutson could not perform her past relevant work as a nurse assistant. At step five, however, relying on the testimony of the vocational expert who testified at the hearing, the ALJ found that Knutson was able to perform a significant number of jobs in the national economy, namely, cashier, inspector and hand packager, and ticket marker. Therefore, the ALJ concluded that Knutson was not disabled at any time from her onset date through the date of the ALJ's decision.

The Appeals Council declined to review the ALJ's decision, making that decision the final decision of the commissioner for purposes of judicial review.

OPINION

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). As noted above, the commissioner has established a five-step sequential process for determining whether a claimant satisfies this definition. In this case, plaintiff contests the ALJ's decision only at step five, that is, the ALJ's determination that, in light of her age, education, work experience and RFC, Knutson was capable of making a vocational adjustment to certain kinds of light jobs that exist in significant numbers in the national economy.

In reviewing the ALJ's decision under 42 U.S.C. § 405(g), the question for the court is not whether it would reach the same decision the ALJ did, but whether the ALJ's decision is supported by "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Stated differently, this court must determine whether the ALJ's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. In addition, the ALJ must identify the evidence and

5

build a "logical bridge" between that evidence and the ultimate determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

Knutson contends the ALJ's step five finding was erroneous because it was based on a faulty RFC evaluation. Specifically, she contends that the ALJ committed the following errors in arriving at the RFC: (1) she failed to properly evaluate the medical opinions; (2) she failed to consider the combined impact of all of Knutson's impairments, including her obesity; and (3) she mischaracterized the record in finding that Knutson's subjective complaints were not entirely consistent with the evidence.

## I. Evaluation of Opinion Evidence

The record before the ALJ contained the following medical opinions:

1. A June 30, 2017 "To Whom It May Concern" letter from Knutson's primary physician, Sridhar Thirumalai, M.D., stating that Knutson is "totally disabled" and unable to perform gainful employment due to "her multiple medical problems," AR 572[5];

2. A January 1, 2016 statement of "Ability to Perform Work Function" from Alena Marozava, M.D., who performed a one-time consultative evaluation of Knutson in connection with her application for disability benefits; Marozava stated that Knutson could stand 45 minutes to one hour, after which she would need five minutes' rest; could walk about 6 blocks without resting; and could not lift, carry, or handle with her left hand, AR 424;

3. A January 6, 2016, opinion from Dr. Walcott, a non-examining state agency physician, who concluded that Knutson could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk six hours and sit six hours in an eight-hour workday, AR 88-89; and

4. An October 6, 2016 opinion from Dr. Fowler, another non-examining state agency physician, who opined that Knutson could lift/carry 50 pounds occasionally, 25 pounds frequently, stand/walk six hours, sit six hours, and frequently handle and finger with her left hand, AR 117-18.

---

[5] Dr. Thirumalai wrote similar notes on June 5, 2015, indicating that Knutson could work only four hours a day, 3 days a week, AR 625, and on July 15, 2015, indicating that Knutson should be excused from work indefinitely. AR 638.

The ALJ gave the most weight to Dr. Walcott's opinion of Knutson's exertional limitations, finding that opinion to be "generally consistent" with the medical evidence of record. She gave little weight to Dr. Fowler's opinion that Knutson was capable of lifting or carrying 50 pounds, but she did agree with his opinion that plaintiff was limited to frequent and not constant handling and fingering with the left hand. AR 29. She also gave little weight to Dr. Marozava's opinion that Knutson could not lift or carry anything in her left hand or handle objects with her left hand due to severe pain in her thumb, noting that it was based on a single examination, was not supported by the doctor's examination findings or other medical evidence in the record, and in fact appeared to be based on Knutson's own description of her limitations rather than objective evidence. AR 30. Finally, the ALJ gave "very little weight" to Dr. Thirumalai's general statement that Knutson was "totally disabled," finding it to be unsupported by the doctor's limited examinations, it did not inform the RFC, and it was an opinion on a subject (*i.e.,* whether Knutson was capable of working) reserved for the commissioner. AR 30.

Knutson challenges the ALJ's weighing of all of these medical opinions on numerous grounds. Her objection to the weighing of Dr. Thirumalai's statement can be dispensed with quickly. Regardless whether Thirumalai was one of Knutson's treating physicians, his conclusory statement was neither informative nor supported by his examination findings, which documented normal findings except for some joint tenderness, including in Knutson's left thumb. AR 575, 768-69. Moreover, although an ALJ must consider a doctor's assessment about the nature and severity of a claimant's impairments, whether a claimant is able to work is an issue reserved for the commissioner. *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016). The ALJ reasonably gave little weight to Dr. Thirumalai's opinion on that issue, given that it was neither explained nor supported by his contemporaneous records. Under the regulations in effect at the time Knutson filed her application, an ALJ was to give the opinion of a treating physician controlling weight only if it was "well-supported by medically acceptable clinical and

7

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . .." 20 C.F.R. § 404.1527(d)(2)[6]; *see also White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005). Dr. Thirumalai's opinion did not meet those criteria.

The ALJ also had good reasons to be skeptical of the opinions offered by Dr. Marozava, the consulting physician. As the ALJ noted, in documenting Knutson's functional abilities, Dr. Marozava appeared simply to have reported what Knutson told her rather than draw her own conclusions. For example, when describing Knutson's lifting limitations, Dr. Marozava wrote: "Able to lift grocery bags and gallon of milk with her R hand and arm, L hand - unable to lift and carry nothing [*sic*] due to severe pain in her L thumb." AR 424. Similarly, with respect to Knutson's walking limitations, Dr. Marozava wrote that she was "Able to walk 6 blocks, needs to stop and rest because her hips and legs are getting weaker and she reported some burning sensation." *Id*. Nothing in the doctor's note reflects that she actually *observed* Knutson lift grocery bags or milk gallons or walk six blocks during the examination. Dr. Marozava's notes support the ALJ's conclusion that the doctor had based her opinion on Knutson's subjective complaints. And "where a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it." *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013).

However, I agree with Knutson that the ALJ erred by relying on Dr. Fowler's opinion concerning her handling and fingering limitations. As Knutson points out, Dr. Fowler reviewed the record in October 2016, so he did not see the 2018 imaging that showed a worsening of Knutson's arthritis in her left thumb, nor did he see the June 2018 assessment from Dr. David Dennison finding "moderately severe CMC arthritis" for which he offered fusion surgery. AR 851, 852. Although the Seventh Circuit has recognized that "[i]f an ALJ were required to update the record any time a claimant continued to receive medical treatment, a case might never end," *Keys v. Berryhill*, 679 F. App'x 477, 480–81 (7th Cir. 2017) (citing *Scheck v. Barnhart*,

---

[6] On March 27, 2017, new rules went into effect and apply to claims filed on or after that date.

357 F.3d 697, 702 (7th Cir. 2004)), it also has held that it is error for an ALJ to "rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018), *Id.* at 728, as amended on reh'g (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment"). *See also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny); *Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) (ALJ erred in crediting the state-agency opinions, which were outdated and missing about 70 pages of medical records).

The acting commissioner argues that the new imaging does not warrant remand because it does not show a new condition but only a progression of Knutson's left thumb arthritis, of which Dr. Fowler was aware. As the acting commissioner points out, x-rays of Knutson's left wrist in January 2018 described the degenerative changes since March 2016 as "mild." AR 807. However, another set of x-rays in June 2018 noted that Knutson's degenerative changes had "progressed" in the six months since January, and described her arthritis as "advanced." AR 852. Moreover, after reviewing the x-rays, examining Knutson, and considering her history of continued pain and loss of function despite trying splints and numerous injections, Dr. Dennison told Knutson that she should consider having the CMC joint fused. AR 850-51. This evidence seems to show a fairly significant progression of Knutson's CMC arthritis since 2016, which reasonably could have led Dr. Fowler to adjust his conclusions about Knutson's handling and fingering limitations.

More importantly, the ALJ did not grapple with this evidence. Although the ALJ cited to the 2018 evidence, she did so only in a string of record citations that support the unremarkable finding that Knutson had been diagnosed with carpometacarpal arthritis in the left thumb. AR 28. The ALJ wrote nothing that would suggest she recognized that Knutson's

9

condition had worsened since 2016.  To the contrary, the ALJ suggested that Knutson's thumb problem had *improved*, citing records stating that Knutson "denied carpal tunnel symptoms," had said that thumb splints were helping, and reported in March 2016 that her "De Quervain tenosynovitis seemed to have improved." *Id*.  But carpal tunnel syndrome and De Quervain tenosynovitis are different conditions from the advanced arthritis in Knutson's CMC joint; further, Knutson later reported that thumb splints had *not* provided any long-term benefit.  Contrary to the ALJ's apparent finding of medical improvement, Knutson continued to seek treatment options for her thumb, she testified that she still had significant pain and limitations with grasping and handling, and she said that she was contemplating surgery.

   The ALJ did not acknowledge any of Knutson's hearing testimony in her decision.  The only evidence she discussed that relates to Knutson's functioning at the time of the hearing was her daily activities, which included driving, shopping for groceries and clothing, fishing, camping, and playing cards.  AR 27.  However, none of these activities contradict or impeach Knutson's testimony that she has problems handling objects because of left thumb pain.  In particular, Knutson testified that she drove by using her right hand.  She was not asked how she performed her other manual activities.  Even if, as the acting commissioner argues, playing cards is an activity that requires the use of both hands, Knutson presumably does not play cards every day for eight hours a day.  Moreover, Knutson admitted she did not have problems with fine finger movements like grasping a cup handle, but had problems when she needed to use her whole hand, as when holding a glass.

   In short, the ALJ failed to build an accurate and logical bridge between the evidence and her conclusion that Knutson is capable of performing handling and fingering activities for up to two-thirds of the workday.  Dr. Fowler's opinion does not provide the requisite bridge because it was stale, and the ALJ's passing mention of the 2018 x-rays and surgery recommendation from Dr. Dennison fails to provide assurance that she considered Knutson's strongest evidence

supporting her allegations of disabling thumb pain. As the vocational expert testified, if Knutson's ability to perform reaching and handling is reduced from "frequently" to "occasionally," then this would eliminate the light jobs on which the ALJ relied to reach her conclusion at step five. Given the pivotal importance of this issue to whether Knutson was disabled, the ALJ needed to articulate a rationale sufficient to establish that it was not arbitrary to employ frequent use and handling in her hypothetical to the VE. Because this rationale is lacking, Knutson's case must be remanded for new proceedings, including obtaining updated medical opinions from the state agency physicians if necessary.

## II. Other Alleged Errors

For the sake of completeness, I briefly address Knutson's other claims of error. First, she contends that the ALJ erred by failing to consider the combined impact of all of Knutson's impairments, including those that are non-severe. Specifically, Knutson argues that the ALJ did not consider the impact that her obesity would have on her ability to perform light work.

I disagree. The ALJ specifically found that Knutson's obesity was a severe impairment and explained that she considered the effect it would have on Knutson's ability to function and perform routine movement within the work environment. AR 29. The ALJ determined that in spite of her obesity, Knutson still could perform light work, noting that Knutson's clinicians observed that she ambulated quite well without an assistive device, she had a functional range of motion, and she did not have any significant problems with her lower extremities. *Id*. Knutson suggests that the ALJ failed to consider how her obesity impacted her ability to engage in "prolonged sitting," but she does not identify any evidence that supports such a limitation. Accordingly, Knutson has not established error. *See Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (ALJ's failure to explicitly consider applicant's obesity is harmless if applicant did not explain how her obesity hampered her ability to work.); *Skarbek v. Barnhart*, 390 F.3d 500, 504

(7th Cir. 2004) (rejecting argument that ALJ's failure to consider obesity required reversal when plaintiff "does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk").

Knutson also contends the ALJ erred by failing to account for her depression and anxiety. As an initial matter, the acting commissioner concedes that the ALJ made a mistake when she rejected the diagnosis of depression as not having been made by an "acceptable medical source." AR 24. However, the ALJ credited the diagnosis of anxiety, and proceeded to assess Knutson's mental functioning in the four broad areas set out in the regulations for assessing mental impairments. *Id*. The ALJ concluded that Knutson had at most mild limitations in her ability to perform basic work activities, and thus her anxiety was not severe. AR 24-25. Knutson does not challenge any of the ALJ's findings concerning her mental functioning nor does she argue that the ALJ should have included specific limitations in the RFC to account for specific mental limitations. Therefore, the ALJ's failure to recognize that Knutson had a valid diagnosis of depression as well as anxiety was harmless. Citing to internet research, Knutson argues that the ALJ failed to account for how her depression and anxiety "exacerbate" her feelings of pain, but Knutson must cite to some medical evidence *in the record* to justify further restrictions in the RFC. *See Loveless*, 810 F.3d at 508. The mere fact that Knutson has been diagnosed with depression is insufficient. *See also Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (pointing to a diagnosis is insufficient).

Finally, Knutson challenges the ALJ's evaluation of her subjective complaints of pain and fatigue. The ALJ cited three main reasons for rejecting Knutson's subjective complaints: (1) they were inconsistent with the objective medical evidence, which did not document significant abnormalities or functional restrictions; (2) they were inconsistent with Knutson's "fairly routine and conservative" course of treatment; and (3) they were inconsistent with Knutson's daily activities. Knutson argues that the ALJ's discussion of these factors was unduly one-sided, and

that the ALJ failed to note various abnormal medical findings, Knutson's persistent attempts to reduce her pain through injections and physical therapy, and important qualifiers on Knutson's daily activities, including the assistance she received from her children.

It is true that an ALJ must consider all relevant medical evidence and cannot cherry-pick facts that support a finding of non-disability while ignoring evidence that points toward a disability finding.  *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).  But the ALJ did not do that here.  Notably, Knutson has not identified any medical findings (apart from the evidence concerning her left hand arthritis, discussed above) that the ALJ allegedly overlooked that would preclude a finding that Knutson can perform light work.  It is true, as Knutson points out, that the record documents persistent complaints of pain and efforts on her part to alleviate it, typically through injections, but that evidence does not necessarily establish that the pain was disabling, particularly in the absence of significant medical abnormalities in Knutson's back, neck or hips.  Moreover, as the acting commissioner points out, the ALJ accommodated Knutson's pain to some extent by limiting her to light work.  Overall, the ALJ's decision establishes that she did not ignore evidence favorable to Knutson; she simply did not give it the weight that Knutson thinks it deserved.  This is not a basis for remand.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (court cannot reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the commissioner.).

Finally, although Knutson's daily activities are not particularly robust, the ALJ could reasonably conclude from her ability to drive on a daily basis, shop for groceries and clothing biweekly, prepare meals and do some laundry, as well as camp, fish, and play cards as tolerated, that Knutson might have been exaggerating her limitations. Shopping and meal preparation, in particular, require some degree of walking and standing, even if Knutson may have received assistance from her children, and driving and playing cards suggest an ability to sit for longer than the 15 minutes Knutson reported on her function report.  AR 280.  Importantly, the ALJ

13

does not appear to have equated Knutson's reported activities with an ability to perform light work on a full time basis; rather, she noted them as just one consideration supporting the overall conclusion that Knutson's subjective complaints were not entirely credible. This was proper. *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) (although ALJ should not equate daily activities with the rigorous demands of the workplace, it is "entirely permissible" to examine them to assess whether claimant's testimony about effects of impairments was credible or exaggerated).

In sum, apart from the ALJ's failure to adequately discuss the more recent evidence concerning Knutson's left hand arthritis and to explain the basis for her conclusion that it does not preclude Knutson from performing jobs requiring frequent handling, there are no errors that would warrant remand. However, the ALJ is free on remand to reconsider not just the left hand issue but any other issue relevant to disability, notwithstanding this opinion.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Tracy Knutson's applications for disability insurance and supplemental security income is REMANDED for further proceedings pursuant to sentence four of 28 U.S.C. § 405(g). The clerk of court is directed to enter judgment in favor of plaintiff and against defendant.

Entered this 27th day of September, 2022.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge